DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | |
|---|---|
| VALLEY NATIONAL BANK, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil No. 2016-47 |
| | ) |
| M/Y CORSAIR F/K/A Sweet ILLUSION, | ) |
| | ) |
|     Defendant. | ) |
| | ) |

APPEARANCES:

**Claire Tagini**
**Ryan C. Meade**
Quintairo, Prieto, Wood & Boyer, P.A.
Miami, FL
    *For Valley National Bank*

## JUDGMENT

GÓMEZ, J.

Before the Court is the motion of Valley National Bank for default judgment and for an order of sale against M/Y Corsair f/k/a Sweet Illusion.

### I.    FACTUAL AND PROCEDURAL HISTORY

Having reviewed the record, the Court makes the following findings of fact:

1. The M/Y Corsair f/k/a Sweet Illusion (the "Vessel") is a 58'6" Tarquin Pilot House Motor Yacht built by Kha Shing Enterprises in 2004.

2. The owner of the Vessel is Chuck T, LLC ("Chuck T").

3. On October 12, 2004, Chuck T borrowed $792,000 (the "loan") from NFB Maritime, Inc., d/b/a First New England Financial ("NFB"). The loan was evidenced by an October 12, 2004, promissory Note (the "NFB Note") in which Chuck T promised to pay NFB $792,000 plus interest, expenses, and fees.

4. Pursuant to the terms of the NFB Note, Chuck T was required to make monthly installment payments on the loan to NFB. The NFB Note also provides that Chuck T will be in default by failing to pay an installment. Further, the NFB Note provides that in the event of default, the NFB Note will become due and payable in its entirety.

5. On October 12, 2004, Chuck T executed an Adjustable Rate Rider (the "Rider") to the NFB Note. The Rider set interest on the NFB Note at 6.6% per annum. Beginning on November 12, 2007, the interest rate would be adjusted annually by "adding the Wall Street Journal Prime Rate . . . to a margin of 2.1%." ECF No. 22, Exh. 1 at 22.

6. On October 12, 2004, Chuck T gave NFB a mortgage on the Vessel (the "NFB Mortgage"). The terms of the NFB Mortgage gave NFB the right to accelerate payment on the NFB Note in the event of a default and the right to sell or dispose

      the Vessel at private sale or public auction. The terms of the Mortgage also gave NFB, and its assignees, the right to recover all costs, fees, disbursements, expenses, charges and attorney's fees associated with enforcing the mortgage.

7. The NFB Mortgage was signed by Charles Turlinski on behalf of Chuck T. The NFB Mortgage indicates that Charles Turlinski is a member of Chuck T.

8. On October 13, 2004, NFB assigned its interest in the NFB Mortgage to Ameribank.

9. On April 15, 2008, Ameribank assigned its interest in the NFB Mortgage to Enterprise National Bank of Palm Beach ("Enterprise National Bank").

10. On May 21, 2008, Chuck T executed and delivered a document entitled "'Restated' Promissory Note" ("Restated Note") to Enterprise National Bank. In the Restated Note, Chuck T promised to pay Enterprise National Bank $792,019.44 (the "debt"). Pursuant to the terms of the Restated Note, Chuck T was required to make monthly installment payments towards the debt. For the first sixty monthly payments, the interest rate on the debt was 7%. Thereafter, the interest for each monthly payment was to be calculated as described in the Restated Note. *See* ECF No. 1-6 at 1.

11. Under the Restated Note, Chuck T was required to make monthly payments beginning on June 12, 2008.

12. Enterprise National bank was succeeded by 1st United Bank, which purchased Enterprise National Bank's parent company, Enterprise Bancorp. Thereafter, Valley National Bank merged with 1st United Bank, the result of which is that Valley National Bank is the successor to 1st United Bank.

13. On March 12, 2016, Chuck T failed to make a monthly payment and was in default under the terms of the Restated Note and the NFB Mortgage.

14. On May 19, 2016, Valley National Bank accelerated the amount due under the Restated Note and demanded that Chuck T pay the Restated Note in full. Chuck T has not cured its default.

15. On June 20, 2016, Valley National Bank commenced an action *in rem* against the Vessel seeking to foreclose on the NFB Mortgage.

16. On June 27, 2016, the Clerk of Court issued a warrant for the arrest of the vessel. The United States Marshal arrested the Vessel on August 2, 2016.

17. From April 21, 2018, through April 28, 2018, Valley National Bank published notice of this action in the Virgin Islands Daily News.

18. No party has filed an answer or filed a claim against the Vessel. On July 18, 2018, the Clerk of Court entered default against the Vessel.

19. Chuck T is in default on the Restated Note. As of July 27, 2018, Chuck T is in debt to Valley National Bank in the principal amount of $472,543.71, plus interest in the amount of $201,165.28. Since July 20, 2018, interest has continued to accrue at a rate of $226.56 per day. In addition, Valley National Bank has incurred the following costs: $27,561.96 in attorney fees and costs; a $5,736 Marshal's fee for the arrest of the vessel; $15,420 in custodian fees; $2,193.31 for stewardship and maintenance; $40,270.25 for wharfage, storage, and dockage; $35,255.99 in insurance premiums; and $1,111.07 in other miscellaneous costs.

## II. DISCUSSION

Federal Rule of Civil Procedure 55(b)(2) allows courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. V.I. Bd. Of Tax Rev.*, 922 F.2d 168, 177 n.9 (3d Cir. 1990). A motion for entry of default judgment must contain evidence of the following: (1) that default was entered; (2) that the defendant has not appeared; (3) that the defendant is not an

infant or incompetent; (4) that all pleadings were validly served upon the defendant; (5) the amount of judgment and how it was calculated; and (6) an affidavit of non-military service. *See Bank of Nova Scotia v. Abdallah*, No. CV 20012-0033, 2014 WL 2976232, at *3 (D.V.I. July 1, 2014). In addition, the Court must consider three factors when determining whether to grant a default judgment: "(1) [the] prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### III. <u>ANALYSIS</u>

"Under the Ship Mortgage Act, a valid ship mortgage meeting the requirements of 46 U.S.C. § 31322 ("Section 31322") is a 'preferred mortgage,' which 'is a lien on the mortgaged vessel in the amount of the outstanding mortgage indebtedness secured by the vessel.'" *Governor & Co. of Bank of Scotland v. Sabay*, 211 F.3d 261, 270 (5th Cir. 2000) (quoting 46 U.S.C. § 31325(a)). In order to meet the requirements of Section 31322 the mortgage must: (1) include the whole of the vessel; (2) be filed in substantial compliance with 46 U.S.C. § 31321 ("Section 31321"); and (3) cover a documented vessel. 46 U.S.C. § 31322.

Section 31321 states, in pertinent part:

> To be filed, a bill of sale, conveyance, mortgage, assignment, or related instrument must--
> (1) identify the vessel;
> (2) state the name and address of each party to the instrument;
> (3) state, if a mortgage, the amount of the direct or contingent obligations (in one or more units of account as agreed to by the parties) that is or may become secured by the mortgage, excluding interest, expenses, and fees;
> (4) state the interest of the grantor, mortgagor, or assignor in the vessel;
> (5) state the interest sold, conveyed, mortgaged, or assigned; and
> (6) be signed and acknowledged.

46 U.S.C. § 31321(b).

A preferred mortgage may be enforced after default of any term of the mortgage by an *in rem* action against the vessel. 46 U.S.C. § 31325(a)-(b). A sale in this manner terminates all claims and, the vessel is sold free of all liens. 46 U.S.C. § 31326(a).

In support of its motion, Valley National directs the Court to the NFB Mortgage and the affidavit of Daniel Sheesley ("the Affidavit"). The NFB Mortgage was attached to Valley National's verified complaint. *See* Complaint; ECF No. 1-1. A review of the NFB Mortgage, and the Affidavit, reveals that the NFB Mortgage was filed with the United States Coast Guard on November 8, 2004. *See* Complaint; ECF No. 1-1. Daniel Sheesley avers in the

Affidavit that Chuck T "pledged the whole (100%) [of the] Vessel." Affidavit; ECF No. 49-1.

Further, the NFB Mortgage identifies the Vessel by Hull Identification Number; identifies Chuck T as the borrower; lists Chuck T's name and address; and indicates that the amount secured by the mortgage is $792,000. The NFB Mortgage also states NFB's interest in the Vessel. The NFB Mortgage is signed by Charles Turlinski (a member of Chuck T) on behalf of Chuck T.

Finally, the NFB Mortgage states that the Vessel is, and is to remain, a documented vessel. Consistent with the representation in the NFB Mortgage, Daniel Sheesley avers that the NFB Mortgage includes the United States Coast Guard Documentation Number and was filed "in compliance with the requirements of a valid preferred ship's mortgage." Affidavit; ECF No. 49-1 at 4.

Having met the requirements of § 31322, the NFB Mortgage is a preferred mortgage (the "preferred mortgage"). In the event of default "the mortgagee may . . . enforce the preferred mortgage lien in a civil action *in rem* for a documented vessel." 46 U.S.C. § 31325(b)(1).

Chuck T is in default on Valley National Bank's preferred mortgage. Under the terms of 46 U.S.C. § 31325, Valley National

Bank is entitled to bring a civil *in rem* action against Chuck T to enforce its preferred mortgage.

Under 46 U.S.C. § 31326, "[A] vessel [may be] sold by order of a district court in a civil action in rem brought to enforce a preferred mortgage lien or a maritime lien."

Under Virgin Islands Law, to prevail on a debt and foreclosure claim, the plaintiff must show that: (1) the debtor executed a promissory note and mortgage; (2) the debtor is in default under the terms of the note and mortgage; and (3) the lender is authorized to foreclose on the property mortgaged as security for the note. *Thompson v. Florida Wood Treaters, Inc.*, 52 V.I. 986, 995 (D.V.I. 2009).

The facts found by the Court establish that Valley National Bank has satisfied the requirements for an *in rem* debt and foreclosure action.

The premises considered, it is hereby

**ORDERED** that Valley National Bank's motion for default judgment is **GRANTED**; it is further

**ORDERED** that the trial setting in this matter is **VACATED**; it is further

**ORDERED** that Valley National Bank's preferred mortgage is a first priority lien; it is further

    **ORDERED** that Valley National Bank's preferred mortgage, and any liens subsequent to it are hereby foreclosed; it is further

    **ORDERED** that Valley National Bank shall recover from the Vessel the principal balance in the amount of $472,543.71; interest in the amount of $232,657.12; upon petition, reasonable attorney fees that may be permitted by law; Marshal's fee for the arrest of the vessel in the amount of $5,736; custodian fees in the amount of $17,820; stewardship and maintenance costs in the amount of $2,193.31; wharfage, storage, and dockage costs in the amount of $46,024.88; and insurance premiums in the amount of $40,018.99. Interest continues to accrue on the principal at a rate of $226.56 per diem from July 20, 2018, until the date of judgment; it is further

    **ORDERED** that the United States Marshal shall immediately set a time, date, and place for the sale of the M/Y Corsair f/k/a Sweet Illusion; it is further

    **ORDERED** that the Vessel shall be sold by the United States Marshal according to law and the proceeds of such sale shall be applied first to the expenses associated with any sale, including but not limited to the costs of publication and the commission assessed by the United States Marshal's Service pursuant to Title 28, Section 1921 of the United States Code, and then toward satisfaction of this Judgment in favor of Valley

National Bank, including any costs and attorney's fees that may be awarded upon application and any sums that may be paid by Valley National Bank for insurance premiums, taxes, and expenditures necessary to maintain the Vessel pending sale with interest from the date of any such payment. Pursuant to Title 5, Section 489(5) of the Virgin Islands Code, the surplus, if any, remaining after application of the proceeds as provided above, shall be returned to the debtor; and it is further

**ORDERED** that

1. Pursuant to Title 5, Section 484 of the Virgin Islands Code, notice of the Marshal's sale shall be posted for four (4) weeks prior to the sale in a public place in or near the Office of the Clerk of the Court; and published once a week for at least four (4) consecutive weeks prior to the sale in a newspaper regularly issued and of general circulation in the U.S. Virgin Islands, which uses newsprint. The notice shall describe the Vessel as set out above and shall contain the terms and conditions of sale as set out herein.

2. The terms and conditions of the sale shall be as follows:

   a. The Vessel shall be sold as a whole at a public

      sale at the Office of the U.S. Marshal, Federal Building, St. Thomas, U.S. Virgin Islands.

  b. Valley National Bank may bid a credit against its Judgment and interest thereon, plus any costs and expenses, without tender of cash.

  c. The terms of the sale as to all other persons or parties bidding shall be cash.

  d. The successful bidder on the Vessel shall be required to deposit with the United States Marshal cash equal to ten percent of his total bid at or before 5:00 p.m. on the date of the sale of the Vessel; and the remaining ninety percent of the said purchase price to be paid on or before 5:00 p.m. within thirty days inclusive, of the date of sale of the Vessel.

  e. The United States Marshal shall make his report of the sale of the Vessel within ten days from the date of the sale.

3. Valley National Bank shall have any and all writs necessary to execute the terms of this Judgment.

 

S\_____
**Curtis V. Gómez
District Judge**